

PAUL BRUNO
23 Railroad Ave. #24
Danville, CA 94526
Paulbruno1975@yahoo.com

FILED

JUN 17 2020

UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# IN THE UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PAUL LEONARD BRUNO;<br><br>              Debtor, | Case No. 2:18-bk-07428<br>Chapter 7 Proceedings<br><br>**Adv: 2:19-ap-00323** |
| GARY ABEYTA, an individual;<br><br>              Plaintiff,<br>v.<br>PAUL BRUNO, an individual<br>              Defendant,<br>PAUL BRUNO, an individual;<br>              Counterclaimant,<br>v.<br>GARY ABEYTA, an individual; CAVANAGH<br>LAW FIRM, PA, an Arizona Professional<br>Association,<br><br>              Counterdefendant's, | **DEFENDANT'S**<br>**(1) RESPONSE OPPOSING GARY ABEYTA'S MOTION TO DISMSS COUNTS TWO AND THREE OF DEFENDANT'S COUNTERCLAIMS**<br>**(2) REQUEST TO SET EVIDENTIARY HEARING ON STAY VIOLATIONS**<br>**(3) Alternatively, REQUEST FOR LEAVE TO AMEND COUNTERCLAIMS** |

**DEFENDANT'S (1) RESPONSE OPPOSING GARY ABEYTA'S MOTION TO DISMISS COUNTS TWO AND THREE OF DEFENDANT'S COUNTERCLAIMS; (2) REQUEST TO SET EVIDENTIARY HEARING ON STAY VIOLATIONS; (3) ALTERNATIVE, REQUEST FOR LEAVE TO AMEND COUNTERCLAIMS**

Defendant/Counterclaimant, Paul Bruno, ("Bruno" or "Defendant" or "Debtor") on his own behalf, respectfully files his *(1) Response Opposing Gary Abeyta's Motion, To Dismiss Counts Two and Three of Defendants Counterclaims, (the "Motion"); (2) Request To Set Evidentiary Hearing On Stay Violations; (3) Alternative, Request For Leave To Amend Counterclaims, (the "Response").*

## I.     RESPONSE OPPOSING MOTION TO DISMISS COUNTS TWO AND THREE OF DEFENDANTS COUNTERCLAIMS

### INTRODUCTION

As set forth more fully below, in Defendant's Memorandum of Points and Authorities, the Court must deny Plaintiff's Motion, because (1.) the Motion is entirely wrong on the facts and law; (2.) the alleged automatic stay violations at issue began in bankruptcy case no. 2:16-bk-11826-PS, (the "First Bankruptcy") and continued with increased violations during and beyond the automatic stay period in this case no. 2:18-bk-07428-PS, (the "Second Bankruptcy"). The stay violations remain unremedied and are active, continuous stay violations; (3.) Ninth circuit case law is clear that an automatic stay violation never ends until the bankruptcy court rules on the violation – therefore – the alleged, unremedied stay violations are still causing the Debtor damages and harassment during this Second Bankruptcy; (4.) the ruling on the stay violations are crucial to the Defendant's defense of Plaintiff's complaint seeking to deny the Debtor a discharge, pursuant to 11 U.S.C. § 727, because the Plaintiff and Counterdefendant's Cavanagh Law Firm have been in contempt of Court continuously for over three years on these stay violations; (5.) Chapter 7 Trustee Maureen Gaughan lacks standing to pursue or compromise the automatic stay violations. Thus, granting the motion without ruling on the stay violations is highly prejudicial to the Defendant.

Moreover, the Defendant makes a subsequent request that the Court set these stay violations for evidentiary hearing, as the next course of business due to the continued harassment and oppression caused by such unremedied violations. Additionally, and notwithstanding the fact that stay violations only require a notice pleading standard, pursuant to this Court's prior ruling on Defendant's Motion to Dismiss Plaintiff's complaint, pursuant to Fed.R.Civ.P. 12(b)(6), the

Defendant will request leave to amend his Counterclaims (if necessary) to address the continued stay violations in this Second Bankruptcy.

## MEMORANDUM OF POINTS AND AUTHORITIES

## 1. PLAINTIFF'S MOTION IS ENTIRELY WRONG ON THE FACTS AND THE LAW

The Plaintiff's Motion is entirely incorrect on its facts and law. In the Motion, Plaintiff dedicates a large portion of his argument informing the Court of its ruling in Adversary Case No. 2:18-bk-00535-PS. Consequently, Plaintiff appears to be requesting the Court apply the same ruling in that adversary proceeding to this adversary proceeding. That is erroneous, because a disposition of Adv. 2:18-bk-00535 has no res judicata effect on this adversary proceeding.

> **"The doctrine of res judicata provides that `a final judgment on the merits bars further claims by parties or their privies based on the same cause of action. The application of this doctrine is `central to the purpose for which civil courts have been established, the conclusive resolution of disputes within their jurisdiction.' Moreover, a rule precluding parties from the contestation of matters already fully and fairly litigated `conserves judicial resources' and `fosters reliance on judicial action by minimizing the possibility of inconsistent decisions."**

*Tahoe-Sierra Pres. Council v. Tahoe Reg. Planning, 322 F.3d 1064, 1077 (9th Cir.(2003).* See also *In re Schimmels, 127 F.3d 875, 881 (9th Cir.1997) (quoting Montana v. United States, 440 U.S. 147,153-54, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979)).*

Three elements constitute a successful res judicata defense. "Res judicata is applicable whenever there is (1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc., 298 F.3d 1137, 1143 n. 3 (9th Cir.2002) (citing Owens v. Kaiser Found. Health Plan, Inc., 244 F.3d 708, 713 (9th Cir.2001)).*

## IDENTITY OF CLAIMS

First, res judicata depends on an identity of claims. Identity of claims exists when two suits arise from "the same transactional nucleus of facts." *Id. (quoting Owens, 244 F.3d at 714).* Newly articulated claims based on the same nucleus of facts may still be subject to a res judicata finding if the claims could have been brought in the earlier action; however, this is not relevant in this instance. Res judicata bars relitigation of all grounds of recovery that were asserted, or could have

been asserted, in a previous action **between the parties**, where the previous action was **resolved on the merits**. It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought, *Id. at 909*. Plaintiff purportedly alleges that Adversary Proceeding 2:18-ap-00535 somehow applies to counts two and three of Defendant's counterclaims, because that lawsuit also alleged automatic stay violations, which Plaintiff incorrectly contends were exclusively pre-petition. (Mot. p.2; p.3);   There is no relationship between the transactional nucleus of facts asserted in  Adversary Proceeding 2:18-ap-00535 and this adversary proceeding.

Moreover, Adversary Proceeding 2:18-ap-00535 was a lawsuit against the American Arbitration Association and State Farm Insurance Company.  The counterclaims at issue are against Gary Abeyta and Cavanagh Law Firm.  Finally, the Court never reached a decision on the merits nor did it conduct an evidentiary hearing in Adversary Proceeding 2:18-ap-00535.  In fact, neither Defendant in Adv. 00535 even filed a motion to dismiss.   This matter is a motion to dismiss (with prejudice)  Counterclaims Counts Two and Three, necessary to remedy automatic stay violations brought within the context of a § 727 complaint that constitutes the Defendant's entire defense to Plaintiff complaint.  In fact, the bankruptcy automatic stay is a fundamental debtor protection in bankruptcy, and the bankruptcy discharge is the fundamental purpose of bankruptcy.  **Thus, Plaintiff's Complaint and the Motion seek to annihilate the entire purpose of a Debtor filing bankruptcy**.


## FINAL JUDGEMENT ON THE MERITS

Second, Res judicata also requires a final judgment on the merits.  There was clearly no such final judgment in Adversary Proceeding 2:18-ap-00535.  A true and correct copy of the Court's May 8, 2019 Order in adversary proceeding 2:18-ap-00535 is incorporated herein by reference and attached as **Exhibit A**.  As the Order clearly reflects, the Court did not make any findings of facts or conclusions of law nor did it rule on any stay violations.  In fact, the Court did not cause a remedy nor make a legal determination of the automatic stay violations at issue in that adversary proceeding.  As discussed more fully in a later section of this Response, automatic stay violations do not end until the bankruptcy Court rules on the violation.  See *In re Snowden 765. F.3d 651, 660 (9ᵗʰ Cir. 2014)*

**PRIVITY BETWEEN THE PARTIES**

Third, the final element of Res Judicata is privity between the parties. "Privity" — for the purposes of applying the doctrine of res judicata — is a legal conclusion "designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved." *Southwest Airlines Co. v. Texas International Airlines, Inc., 546 F.2d 84, 94 (5th Cir.), cert. denied. 434 U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977) (citing Jefferson School of Social Science v. Subversive Activities Control Board, 331 F.2d 76 (D.C.Cir.1963))*. There is arguably no privity between the American Arbitration Association and the State Farm Insurance defendants in Adversary Proceeding 2:18-ap-00535 and Gary Abeyta and Cavanagh Law Firm, the Counterdefendant's in this adversary proceeding.

To conclude, the Plaintiff's argument that Adversary Proceeding 2:18-ap-00535 and this adversary proceeding are the same; therefore, the Court must dismiss these counterclaims with prejudice seems erroneous, because there is no legal Res Judicata effect whatsoever.

## 2. THE AUTOMATIC STAY VIOLATIONS AT ISSUE BEGAN IN THE FIRST BANKRUPTCY AND CONTINUED WITH INCREASED VIOLATIONS AND DAMAGES DURING AND BEYOND THE AUTOMATIC STAY PERIOD IN THE SECOND BANKRUPTCY.

Notwithstanding the fact that *In re Snowden 765, F.3d 651, 660 (9th Cir. 2014)* created Ninth Circuit precedent dictating that automatic stay violations don't end until the bankruptcy court rules and remedies the violation, the Defendant will briefly address Plaintiff's incorrect assertions that the alleged automatic stay violations were limited to the First Bankruptcy; therefore, they are "pre-petition claims" (Mot p.3).

## COUNTERCLAIM COUNT TWO

Defendant's Counterclaim Count Two begins on p. 15 of Defendant's Answer, Affirmative Defenses and Counterclaims. In that count, Defendant alleges Plaintiff withheld the property deed to a parcel physically situated at 5935 N. Echo Canyon Lane, Phoenix, AZ 85018, ("Echo Canyon"). While Plaintiff has satisfied the notice pleading standards for this counterclaim, Plaintiff did provide sufficient notice, specifically in ¶ 113, that Defendant made multiple email and other requests beginning on August 19, 2016, and for several months afterwards, seeking turnover of the Echo Canyon deed. When this Second Bankruptcy case commenced on June 1,

2018, Defendant was still seeking turnover of Echo Canyon while he was in Chapter 13. Turnover of the Echo Canyon deed was necessary for Plaintiff to perform on his proposed Chapter 13 Plan of Reorganization. In response to the turnover requests, Plaintiff forced the Debtor into Chapter 7. Now Plaintiff alleges, because the case is in Chapter 7 and the stay violation began in the First Bankruptcy, it is a pre-petition claim that only the Chapter 7 Trustee can pursue or compromise. (Mot. p.8).

The Plaintiff's legal argument is erroneous and completely annihilates the entire purpose of the bankruptcy automatic stay, which is to cease post-petition collection actions, cease harassment, and give debtor's a breathing spell. § 362(a)(3) makes it a stay violation to refuse turnover of property of the bankruptcy estate, pursuant to § 542 of the bankruptcy code. Moreover, as this Court may recall, at the hearing on May 16, 2019 this Court conducted an auction to sell Echo Canyon in this bankruptcy case. Leading right up to the auction, and only a few minutes before the auction, the Plaintiff was still threatening to withhold the deed. Moreover, Plaintiff made such threats in open court, while standing at the podium making false statements to Judge Sala about the Echo Canyon stay violation. Just before the auction, Plaintiff was threatening to withhold the deed if he was not given approximately $250,000 from the sale of Echo Canyon, which is the identical conduct Plaintiff engaged in since August 2016 that caused Defendant $1,900,000 in actual damages due to the improper withholding of the Echo Canyon deed. (Counterclaim ¶ 126). Additionally, the Defendant filed a brief to enforce the automatic stay, which was also heard in the bankruptcy court on that same day. The Court ruled to proceed with the auction of Echo Canyon while preserving the Defendant's stay violation claims for later adjudication. Defendant incorporates herein by reference the hearing record from the May 16-17, 2019 bankruptcy court hearing in 2:18-bk-07428-PS.

Additionally, in the Motion p.7; lne. 25-27, Plaintiff incorrectly states: "Thus, based on the allegations in the Counterclaim, the alleged stay violations relevant to Count Three began sometime prior to June 12, 2017 **and ended on the foregoing date**" is an incorrect application of the law, as set forth more fully below. Likewise, in the Motion p. 7; lns. 11-14, Plaintiff incorrectly states: "Although the Counterclaim does not expressly state when the alleged stay violations related to Echo Canyon ended, **as a matter of law, those purported violations ended, at the latest, on September 7, 2017- the date on which the First Bankruptcy ended,** at the latest, on September 7, 2017." This is an incorrect application of the law, because as stated previously, the

Ninth Circuit has created precedent with *In re Snowden 765, F.3d 651, 660 (9th Cir. 2014)* directing that automatic stay violations don't end until the bankruptcy court rules and remedies the violation. Therefore, the automatic stay violation regarding Echo Canyon in Count Three began in the First Bankruptcy and sailed through the First Bankruptcy and landed right in the Second Bankruptcy as an unremedied, accruing stay violation, because subsequent dismissal or closing of a bankruptcy case does not vitiate automatic stay violations. *See 40235 Washington Street Corp. v. Lusardi, 329 F.3d 1076, 1080 n.2 (9th Cir. 2003)*, where the Ninth Circuit ruled that a tax sale in violation of the automatic stay remains void despite subsequent dismissal of a Chapter 11 case as a bad faith filing.

Once this Second Bankruptcy commenced, the Plaintiff refused turnover of the deed and made false statements in open Court at the auction hearing on May 16, 2019.[1] Finally, the Echo Canyon violation is still ongoing and accruing new violations today, because the Court has not set an evidentiary hearing on this automatic stay violation nor has the Court ruled on it; therefore, the stay violation has NOT ended and is still causing damages and harassment of the Debtor.

## COUNTERCLAIM COUNT THREE

Defendant's Counterclaim Count Three begins on p. 17 of Defendant's Answer, Affirmative Defenses and Counterclaims. In that count, Defendant alleges that Plaintiff commenced Arizona Superior Court case no. CV2016-015771 in the Arizona Superior Court without seeking relief from the automatic stay in the First Bankruptcy.[2] The Plaintiff's Motion on p.7 lns. 25-28 states: "the alleged stay violations relevant to Count Three began sometime prior to June 12, 2017 and ended on the foregoing date," [June 12, 2017]. That is another erroneous application of the facts and law, because the violation has not ended.

In case no. CV2016-015771, the Arizona Superior Court ordered Plaintiff to seek relief from the automatic stay in January 2017 before Plaintiff could proceed with his state court

---

[1] The Defendant did not have adequate time, prior to filing this response, to obtain the hearing transcript of the May 16-17, 2019 hearing, when the Echo Canyon auction took place. The hearing is available on audio, and Debtor respectfully requests the Court listen to the audio of those proceedings.

[2] The Plaintiff's Motion to dismiss is filed, pursuant to Fed.R.Civ.P. 12(b)(1). Had the Plaintiff moved to lift the automatic stay as required, he would have filed a Motion to Dismiss, pursuant to 12(b)(6) for failure to state a claim upon which relief can be granted. Following, Plaintiff would have attached the bankruptcy court order lifting the automatic stay to his motion. The Court should view Plaintiff's filing under 12(b)(1) as admissions to the stay violations. Thus, Plaintiff is aware they have been in contempt of court for over three years.

litigation. A true and correct copy of the Arizona Superior Court order, referenced at ¶ 151 of the Counterclaim, is incorporated herein by reference and attached as **Exhibit B**. However, Plaintiff refused to seek stay relief from the bankruptcy court and instead continued to litigate in the Arizona Superior Court in violation of that Court's January 2017 Order. Then on June 12, 2017, the Arizona Superior Court dismissed the lawsuit, pursuant to the facts outlined in ¶ 153 of the Counterclaim. A true and correct copy of the Arizona Superior Court Order dated June 12, 2017 is incorporated herein by reference and attached as **Exhibit C**. Even worse, after the Arizona Superior Court ordered the case dismissed on June 12, 2017, Plaintiff and an intervenor, Sherman & Howard, LLC, continued to litigate in the dismissed case. Eleven months later on May 30, 2018, (the day before the petition date) the Arizona Superior Court issued a default judgement against the Defendant. That default judgement is attached to Proof of Claim #1 in this Second Bankruptcy, where damages, litigation and harassment of the Debtor continue today. A true and correct copy of the May 30, 2018 default judgement issued in CV2016-015771 is incorporated herein by reference and attached as **Exhibit D**. In July 2018, in order to cause the stay violating state court litigation to cease, Defendant was forced to remove CV2016-015771 to the Bankruptcy Court, where it became adversary proceeding 2:18-ap-00272. Moreover, Defendant was forced to file a Motion to Dismiss with Prejudice on around October 2018, and Defendant has been waiting for the Court to set that motion for hearing now for eighteen months. The point is - Plaintiff incorrectly contends the Count Three automatic stay violation ended on June 12, 2017 when it is still alive and accruing damages in this Second Bankruptcy.

Moreover, when the Arizona Superior Court dismissed CV2016-015771 on June 12, 2017, the Plaintiff was required to cause the case to be dismissed in a way that ceased litigation and before a default judgement could be entered against Defendant on May 30, 2018. When the default judgement was submitted, Plaintiff had an affirmative duty to inform the Arizona Superior Court that the case was void and tainted (pursuant to the June 12, 2017 Court Order) because non debtor parties have an affirmative duty of compliance with the automatic stay. *See Eskanos & Adler, P.C. v. Leetien (In re Eskanos), 309 F.3d 1210 (9th Cir. 2012),* which is a Ninth Circuit precedent imposing an affirmative duty on parties to dismiss or stay actions that violate the automatic stay.

Based on the foregoing, the Plaintiff is incorrect on his facts and law that the Automatic Stay Violations in Counterclaims Counts Two and Three are restricted to the First

Bankruptcy...thus, they are pre-petition claims that only the Chapter 7 Trustee can litigate is erroneous.

Not only are Counterclaim Counts Two and Three plead as both pre and post Second Bankruptcy automatic stay violations, but in Defendant's Answer, Affirmative Defenses and Counterclaims Defendant attached the September 25, 2017 Expert Report of Susan M. Freeman. Ms. Freeman's report details the Plaintiff's Second Bankruptcy post-petition automatic stay violations. (See Answer Ex.A). These allegations are plead into the Counterclaim on p. 12 ¶¶ 92-94. Therefore, the Plaintiff is incorrect in the Motion, where he argues all of Defendant's counterclaims are limited to the First Bankruptcy. Plaintiff's pleading of Ms. Freeman's Expert Report satisfies the noticing pleading standard.

### 3. **NINITH CIRCUIT CASE LAW IS CLEAR THAT AN AUTOMATIC STAY VIOLATION NEVER ENDS UNTIL THE BANKRUPTCY COURT RULES ON THE VIOLATION, AND THEY ARE NOT SUBJECT TO UNILATERAL COMPROMISE**

The law is very clear that an automatic stay violation does not end until the bankruptcy court rules on the violation. The Ninth Circuit precedent on point is *In re Snowden 765, F.3d 651, 660 (9th Cir. 2014).* Throughout the Plaintiff's Motion, the Plaintiff makes the legal argument that the alleged automatic stay violations somehow ended "as matters of law" with the dismissal of the First Bankruptcy. See Motion p. 4 lne. 10-13; p.7 lne. 11-13; p.7 lne. 25-27, where Plaintiff argues that the automatic stay violations ended during the first bankruptcy or upon the Debtor's voluntary dismissal of the First Bankruptcy, which is **incorrect as a matter of law**.

Moreover, not only does *In re Snowden* direct that automatic stay violations don't end until the bankruptcy court rules on the violation, but *Snowden* also directs that automatic stay violations are not subject to unilateral compromise. Snowden was a bankruptcy debtor, who sued Check Into Cash of Washington, ("CIC"), for violations of the bankruptcy automatic stay. During the litigation, CIC sent Snowden a $1445 settlement offer without admitting to the violation. When Snowden countered CIC's offer at $25,000, CIC declined. On appeal, CIC asserted that its offer and compromise of $1445 ended the violation. Out of that appeal, came the published opinion that stay violations only end when the bankruptcy court rules on the violation. Consequently, the same opinion also established that settlements and compromises likewise don't end a stay violation nor are they mitigating circumstances that substitute for the bankruptcy court putting the gavel

down, once and for all, on a violation. Additionally, a bankruptcy appellate panel of the Ninth Circuit declined to find that an automatic stay violation is remedied by a Rule 68 offer of judgment, noting that "[i]n retrospect, [the creditor] may regret not having explicitly included attorney's fees in its offer of judgment and having offered a sum that would have been sufficient to make the debtor think very hard about whether continued litigation is worthwhile." The Snowden court cited *In re Campion, 294 B.R. 313, 315, 318 (9th Cir. BAP 2003).* Not only is the Plaintiff wrong on the law surrounding the demarcation point that officially ends a stay violation, but the Plaintiff is also wrong, where he states in the Motion that a Chapter 7 Trustee has exclusive standing to compromise a stay violation that harmed an individual debtor such as on Motion p.1 lne. 23-24; and p. 5 lne. 17-19; and p. 6 lne. 10-12.

## 4. **THE COURT'S FINAL RULING ON THE STAY VIOLATIONS ARE CRUCIAL TO THE DEFENDANTS DEFENSE OF PLAINTIFF'S COMPLAINT SEEKING TO DENY THE DEBTOR A DISCHARGE, PURSUANT TO 11 U.S.C. § 727**

The Defendant seeks this Court rule on Plaintiff's automatic stay violations, as the next course of business in this adversary proceeding, in order to put an end to the harassing and damaging nature associated with these automatic stay violations that have been accruing damages since August 2016 and October 2016 respectively. Such preliminary rulings are crucial to Defendant's defense, because Plaintiff brought his complaint, pursuant to § 727 of the Bankruptcy Code, seeking to deny the Debtor a discharge. The reason why this is crucial is because the Plaintiff must prove with a preponderance of the evidence that Defendant had intent to hinder or delay creditors. However, the consequences to the Plaintiff for violating the automatic stay are, first contempt, and second, statutory damages for individuals injured by any willful violation of the automatic stay. See *Havelock v. Taxel (In re Pace), 67 F.3d 187, 191-94 (9th Cir. 1995).* Procuring this bankruptcy court's order that Plaintiff has been in contempt of court for over three years will foreclose on Plaintiff's entire § 727 complaint. A creditor, who is in contempt of court for three years, is legally unable to prove with a preponderance of the evidence that the Debtor hindered and delayed creditors. The Debtor intends to submit the Court's rulings on the stay violations as evidence in a dispositive motion to Plaintiff's entire complaint.

Moreover, Plaintiff's third and fourth causes of action (in his complaint) allege that Defendant made false oaths and failed to follow court orders. See (Compl. pp.6-9). That is erroneous allegation when the Plaintiff, himself, has been in contempt of court for three years

(going on four) on automatic stay violations, which is the same as not following bankruptcy court orders.

Additionally, in Plaintiff's second cause of action, Plaintiff literally alleges that Defendant hindered and delayed the sale of Echo Canyon, See (Compl. ¶¶ 50-51). Plaintiff is actually the party, who hindered and delayed the sale of Echo Canyon for nearly three years in violation of the bankruptcy automatic stay. In Plaintiff's Motion, he appears to be admitting to the Echo Canyon violation stating only that the Court should dismiss Plaintiff's Counterclaims, because the Chapter 7 Trustee has exclusive standing to prosecute Defendant's automatic stay violations. It is critical to the Defendant's defense of this lawsuit that this Court rule and bring finality to such egregious automatic stay violations and the malicious prosecution of Defendant set forth in the complaint.

## 5. **CHAPTER 7 TRUSTEE MAUREEN GAUGHAN LACKS STANDING TO PURSUE OR COMPROMISE THE AUTOMATIC STAY VIOLATIONS AT ISSUE.**

Plaintiff's entire motion is devoid of one single case law citation that stands for the proposition that a Chapter 7 debtor does not have standing to enforce and prosecute violations of the bankruptcy automatic stay. (Mot. pp. 1, 8). Peppered throughout the Motion is Plaintiff's contention that only a Chapter 7 Trustee has standing to prosecute Defendant's automatic stay violations. The Plaintiff relies heavily on laws that only mention "pre-petition claims" and "bankruptcy estate property," with no evidence of legal research having been conducted on the bankruptcy automatic stay.

Moreover, as mentioned previously, the Counterclaims surround automatic stay violations that commenced during the First Bankruptcy that were left unremedied. Those unremedied automatic stay violations sailed through the First Bankruptcy and caused the Second Bankruptcy, where more violations continued to accrue. Then when Defendant was attempting to enforce the automatic stay, Plaintiff forced the Defendant into Chapter 7 in an effort to exterminate his automatic stay violations and negotiate them with the Chapter 7 Trustee. On around January 30, 2020, Plaintiff entered into a settlement with the Trustee surrounding a prenuptial agreement between Plaintiff and Defendant. [Doc 824-1]. That settlement agreement contains the following language on page 9 of 27:

**"5. Release by Trustee of Abeyta and Estate of Abeyta Parties. With the exceptions of the obligations created by this PSA and except as otherwise provided in this PSA, and subject to approval of the Settlement by the Bankruptcy Court, as of the Settlement Date, the Trustee and the Estate hereby release, acquit, and forever discharge the Abeyta parties and their current attorney of record (but not prior counsel) from any and all claims, rights, demands, actions, causes of action, debts, liabilities, whether fixed or contingent, matured or un-matured, anticipated or unanticipated, known or unknown, arising out of or in any way related to the Bankruptcy Case, the Arbitration Case, the Settlement Assets, and the Retained Assets. Notwithstanding the foregoing, the Trustee and Estate do not release the Abeyta parties from any claims, rights, actions, debts, or liabilities which may be used in defense, offset or recoupment in the resolution of the Abeyta Proof of Claim. The Trustee also expressly releases and forever discharges any disputed claims concerning the division of ownership of Real Properties, and the cash proceeds of the sale and rental thereof, which property division issues ae deemed fully resolved by this PSA."**

Based on the foregoing settlement language, signed by Plaintiff and the Chapter 7 Trustee, the Trustee forever waived causes of action against Plaintiff. Therefore, the Chapter 7 Trustee does not have standing to assert these stay violation claims against Plaintiff – assuming arguendo that case law would allow the Chapter 7 Trustee to bring Defendant's automatic stay violation claims in the first place (it does not). As set forth more fully below, Ninth Circuit law does not allow a Chapter 7 Trustee to bring violations of the bankruptcy automatic stay, where the Debtor is the injured party. As previously mentioned in *In re Snowden*, Ninth Circuit law forecloses the proposition that that automatic stay violations are negotiable. Also as previously mentioned, the only thing that brings a stay violation to an end is a bankruptcy court's ruling on the violation not a Chapter 7 Trustee's compromise with the stay violating creditor.

Defendant brought his Counterclaims Counts Two and Three, pursuant to 11 U.S.C. § 362(k)(1). That statute provides that any individual victim of a willful violation may recover actual damages, including costs and attorneys' fees, as well as, punitive damages as follows:

**"[A]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees and, in appropriate circumstances, may recover punitive damages."**

*11 U.S.C. § 362(k)(1), first enacted as § 362, Pub.L. 98-353, § 304, 98 Stat. 333 (July 10, 1984); In re Pace, 67 F.3d at 191-92.*

The remedy afforded individual debtors in § 362(k) is a remedy expressly held for **"an individual"** injured by any willful violation of the stay, was designed by congress to protect the rights of **individual debtors.**

Trustees are often individuals, but they represent the estate and may not be entitled to recover damages under § 362(k). *See Havelock v. Taxel (In re Pace) 67 F.3d 187, 192-93 (9th Cir. 1995).* ("[W]hile a trustee can be an 'individual' if the trustee is a natural person (as opposed to a corporate entity), the individual's status as trustee precludes any finding that the Trustee suffered any damages as an individual, because any harm suffered in the form of costs and attorney's fees is actually incurred by a thing, *viz.* the bankruptcy estate and not by the Trustee, a natural person." This interpretation is reinforced by the terms of § 362(k)(2), which provides:

> **"If such violation is based on an action taken by an entity in the good faith belief that the subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages."**

As the Ninth Circuit explained in *Dawson v. Washington Mut. Bank, F.A. (In re Dawson), 390 F.3d 1139, (9th Cir. 2004)*, the United States Congress expressly intended to limit the § 362(k)(1) sanction remedy to individuals signals the Congressional intent and special interest in "redressing harms that are unique to human beings." *Id. at 1146*. Moreover, actual damages and attorney's fees are "mandatory" sanctions for victims of stay violations. *See In re Schwartz-Tallard, 803 F.3d 1095, 1099-1101 (9th Cir. 2015); In re Snowden, 769 F.3d at 657 (9th Cir. 2014)*. Thus, a Chapter 7 Trustee is statutorily prohibited from both taking these "mandatory" individual debtor sanction awards or from negotiating with them, because they are in fact "mandatory" and only payable to an individual debtor. Likewise, as previously mentioned, non-debtor parties have an affirmative duty of compliance with the bankruptcy automatic stay, which includes a Chapter 7 Trustee's interference with the Debtor's individual prosecution of such claims.

## II.   REQUEST TO SET EVIDENTIARY HEARINGS ON AUTOMATIC STAY VIOLATIONS

On May 16, 2019 this Court conducted a preliminary hearing on Debtor's Motion to Enforce Bankruptcy Automatic Stay – Echo Canyon. On the record, which Defendant incorporates herein by reference, the Court expressly preserved Defendant's automatic stay violations for later adjudication. Because these stay violations are crucial to Defendant's defense of Plaintiff's complaint to deny Defendant a discharge, pursuant to § 727 of the bankruptcy code, an evidentiary hearing on the stay violations is prudent at this juncture.

Not only are evidentiary hearings required to put an end to Plaintiff's stay violations, this request is also supported by a BAP precedent in *In re Mwangi 432 B.R. 812, 824, (9th Cir. BAP)(2010). ("Mwangi I")*. In *Mwangi I*, the BAP faced the identical legal issue this Court now faces regarding the standing of a Chapter 7 Debtor to bring a stay violation proceeding, pursuant to § 362(k), against Wells Fargo Bank for violations of the automatic stay § 362(a)(3). In *Mwangi I* the BAP ruled that in order to determine standing in a § 362(k) action, the threshold issue the bankruptcy Court must determine is whether or not Defendants violated the bankruptcy automatic stay, pursuant to § 362(a), and was the violation willful. The BAP remanded *Mwangi I* to the bankruptcy court to make the identical determination this Court is now presented with.

The threshold issues set forth in *Mwangi I* control the next step in this adversary proceeding. Before moving forward towards the determination of standing requires the Court to make dispositive rulings and put an end to these three (going on four) year continuous automatic stay violations. Moreover, the Court needs to determine if the violation was willful within the meaning of § 362(k).

## III.   ALTERNATIVE REQUEST FOR LEAVE TO AMEND COUNTERCLAIMS

Throughout Plaintiff Motion, Plaintiff raises the proposition that the stay violations were limited to Defendant First Bankruptcy. As explained more fully above, the facts and law don't support that contention. Notwithstanding stay violation complaints require a notice pleading standing, Defendant would respectfully request the Court grant leave to amend the complaint to tighten up the facts surrounding the stay violations that moved into the Second Bankruptcy if absolutely necessary.

**WHEREFORE,** Defendant requests: (1.) the Court deny Plaintiff's motion to dismiss Defendant's Counterclaims Counts Two and Three; (2.) The Court set an evidentiary hearing schedule in order to rule on the automatic stay violations; (3.) Alternatively, Defendant requests leave to amend counts two and three if necessary.

**DATED: June 16, 2020**

Paul L. Bruno

Paul Bruno
23 Railroad Ave. #24
Danville, California 94526
Paulbruno1975@yahoo.com

## MAILING CERTIFICATE

COPY OF THE FOREGOING MAILED TO:
Clerk of the Court
Arizona Bankruptcy Court
230 N. 1st Ave.
Phoenix, Arizona 85003

COPY OF THE FOREGOING EMAILED AND MAILED TO:
Justin V. Niedzialek
DUNN DESANTIS WALT AND KENDRICK
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
*Attorneys for Gary Abeyta*

Jessica Kokal
BROENING OBERG, WOODS & WILSON
2800 N. Central Ave., Suite 1600
Phoenix, Arizona 85004
*Attorneys for Cavanagh Law Firm*

# EXHIBIT A

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br><br>PAUL BRUNO,<br><br>        Debtor. | Chapter 7 Proceeding<br><br>Case No. 2:18-bk-07428-PS |
| PAUL BRUNO,<br><br>        Plaintiff,<br><br>vs.<br><br>AMERICAN ARBITRATION ASSOCIATION, STATE FARM MUTUAL AUTOMOBILE INSURANCE CO., DOES I-X<br><br>        Defendants. | Adversary No. 2:18-ap-00535-PS<br><br>**ORDER RE: STANDING** |

At a status hearing held on February 28, 2019, the Court ordered the Chapter 7 Debtor and the Chapter 7 Trustee to brief the issue of which party has standing to bring and pursue the cause of action in this adversary proceeding. The Court has considered the parties' briefs and the oral argument presented at a hearing held on May 8, 2019. For the reasons stated on the record at the May 8 hearing, the Court finds and concludes that the Chapter 7 Trustee is the party with standing to pursue the cause of action this adversary proceeding.

**SIGNED AND DATED ABOVE**

# EXHIBIT B

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2016-015771                                          01/17/2017

                                              CLERK OF THE COURT
HONORABLE LORI HORN BUSTAMANTE              T. Nosker
                                              Deputy


GARY ABEYTA                          DAVID A SELDEN

v.

G P MEETING & EVENTS INC, et al.     GRANT L. CARTWRIGHT


                                     CRAIG A MORGAN


MINUTE ENTRY


The court has considered the oral arguments presented and the following pleadings regarding
Defendant's Motion to Dismiss:

- Defendant PB Co., Inc.'s Motion to Dismiss
- Response to Defendant PB Co., Inc.'s Motion to Dismiss
- Reply in Support of Defendant PB Co. Inc.'s Motion to Dismiss
- Defendant GP Meeting & Events, Inc.'s Motion for Judgment on the Pleadings
- Response to Defendant GP Meeting & Events, Inc., d/b/a CMI Resources' Motion for Judgment on the Pleadings
- Reply in Support of Motion for Judgment on the Pleadings

*Law*

*Rule 12(b)(6)*
Arizona Rules of Civil Procedure Rule 12(b)(6) allows for the dismissal of a claim for "[f]ailure
to state a claim upon which relief can be granted." In ruling on a Rule 12(b)(6) motion to
dismiss, the Court will "assume the truth of the well-pled factual allegations and indulge all
reasonable inferences therefrom." *Cullen v. Auto-Owners Ins. Co.,* 218 Ariz. 417, 419,189 P.3d
344, 346 (2008). The Court will grant the motion only if the plaintiff is not entitled to relief

CV 2016-015771                                          01/17/2017

"under any facts susceptible of proof in the statement of the claim." *ELM Ret. Ctr., LP v. Callaway,* 226 Ariz. 287, 289 (App. 2010) (quoting *Mohave Disposal, Inc. v. City of Kingman,* 186 Ariz. 343, 346 (1996)).

*Rule 12(c)*
Pursuant to Ariz. R. Civ. P. 12(c) "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." "A motion for judgment on the pleadings pursuant to Rule 12(c) tests the sufficiency of the complaint." *Giles v. Hill Lewis Marce,* 195 Ariz. 358, 359, ¶ 2, 988 P.2d 143, 144 (App. 1999). "Well-pleaded allegations will be taken as true but conclusions of law are not admitted." *Shannon v. Butler Homes, Inc.,* 102 Ariz. 312, 315, 428 P.2d 990, 993 (1967). "'A motion for judgment on the pleadings . . . tests the sufficiency of the complaint,' and a defendant is entitled to judgment 'if the complaint fails to state a claim for relief.'" *Mobile Cmty. Council for Progress Inc. v. Brock,* 211 Ariz. 196, 198, ¶ 5, 119 P.3d 463, 465 (App. 2005) (citing *Giles v. Hill Lewis Macre,* 195 Ariz. 358, 359, ¶ 2, 988 P.2d 143, 144 (App. 1999)).

*Rule 19(a)*
Ariz. R. Civ. P. 19(a) sets forth when a person is required to be made a party:
> (1) Person Required to Be Made a Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.
> (2) Joinder by Court Order. If a person required to be made a party has not been joined, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

"The test of indispensability therefore is whether the absent person's interest in the controversy is such that no final judgment or decree can be entered which will do justice between the parties actually before the court, without injuriously affecting the rights of others not brought into the action." *Bolin v. Superior Court In and For Maricopa County,* 85 Ariz. 131, 135, 333 P.2d 295, 297 (1958).

CV 2016-015771                                              01/17/2017

## *Analysis/Conclusion*

In the instant case, Gary Abeyta and Paul Bruno had a personal relationship as well as a business relationship through two companies, PB Co. Inc. ("PB Co.") and CMI Resources ("CMI"). During their relationship, Mr. Abeyta and Mr. Bruno both received income from PB Co. for the services rendered to CMI. Mr. Abeyta claims that PB Co. and CMI violated the Arizona Wage Act when they withheld payments for distributions to Mr. Abeyta. Mr. Abeyta is requesting declaratory judgment, return of funds allegedly taken by Mr. Bruno, and receipt of funds for distributions that should have been paid to Mr. Abeyta.

Ariz. R. Civ. P. 19(a) requires that a person whose joinder would not deprive the court of subject matter jurisdiction be joined as a party if that person's absence prevents complete relief or impairs that person's ability to protect their interest. As stated in *Bolin*, the test is whether the absent party's interest is such that no judgment can be entered without injuring that person's rights.

In this case, Mr. Abeyta is requesting declaratory judgment seeking the payment of past distributions owed. Mr. Abeyta claims that distributions were made to Mr. Bruno in violation of a corporate agreement. Granting of this claim would potentially make Mr. Bruno liable to both Mr. Abeyta and CMI for violating the agreement. Mr. Bruno would not be able to defend himself against this claim without being a party to the lawsuit. In addition, if all of the relief sought by Mr. Abeyta was granted, there would be a direct impact to Mr. Bruno. For instance, Mr. Bruno's income from the corporations may be reduced, Mr. Bruno may be directed to repay funds, the value of Mr. Bruno's interests in the companies may get diminished and funding to Mr. Bruno may get restricted. Without joinder of Mr. Bruno, there is the potential of Mr. Bruno's property rights and interests being taken without the benefit of due process. Since Mr. Bruno has interests that need protecting, he needs to be joined as a party. Pursuant to Ariz. R. Civ. P. 19(a) and *Bolin*, the court finds Mr. Bruno an indispensable party that must be joined.

Defendants seek dismissal as a result of Plaintiff's failure to name an indispensable party. Other grounds were also presented by the Defendants but the court finds the other grounds unpersuasive in light of the standards that must be imposed in considering dismissal. "Before the trial court grants a Rule 12(b)(6) motion to dismiss, the non-moving party should be given an opportunity to amend the complaint if such an amendment cures its defects." *Wigglesworth v. Mauldin*, 195 Ariz. 432, 439, ¶ 26, 990 P.2d 26, 33 (App. 1999). Although the court finds Mr. Bruno to be an indispensable party, the court must provide an opportunity for Plaintiff to amend the Complaint if amendment would cure the defect; thus, the court will deny the Motions but will direct the amendment of the Complaint.

CV 2016-015771                                      01/17/2017

**IT IS ORDERED** denying Defendant PB Co., Inc.'s Motion to Dismiss and request for attorney's fees.

**IT IS FURTHER ORDERED** denying Defendant GP Meeting & Events, Inc.'s Motion for Judgment on the Pleadings.

**IT IS FURTHER ORDERED** directing Plaintiff to amend the Complaint to add Mr. Bruno on or before March 17, 2017.

**IT IS FURTHER ORDERED** vacating the Order to Show Cause Hearing on January 27, 2017 at 10:00 a.m.

**IT IS FURTHER ORDERED** directing Plaintiff to file a Request to set Order to Show Cause Hearing upon the joinder of Mr. Bruno if Plaintiff still seeks a hearing at that time.

# EXHIBIT C

SUPERIOR COURT OF ARIZONA
MARICOPA COUNTY

CV 2016-015771                                              06/12/2017

HONORABLE LORI HORN BUSTAMANTE

CLERK OF THE COURT
T. Nosker
Deputy

GARY ABEYTA                              DAVID A SELDEN

v.

G P MEETING & EVENTS INC, et al.         GRANT L. CARTWRIGHT


CRAIG A MORGAN


MINUTE ENTRY


The court has considered the oral arguments presented and the following pleadings regarding
Defendants' Motion to Dismiss:

- PB Co., Inc.'s Motion to Dismiss the Amended Complaint
- PB Co., Inc.'s Supplement to PB Co.'s Inc.'s Motion to Dismiss the Amended Complaint
- PB Co., Inc.'s Second Supplement to PB Co.'s Inc.'s Motion to Dismiss the Amended Complaint
- GP Meetings & Events, Inc.'s D/B/A CMI Resources's Motion to Dismiss Mr. Gary Abeyta' Amended Complaint
- Response to GP Meetings & Events, Inc.'s and PB Co. Inc.'s Motions to Dismiss Amended Complaint and, in the Alternative, Cross-Motion for Court to Amend January 17, 2017 Minute Entry
- PB Co., Inc.'s Reply in Support of Its Motion to Dismiss the Amended Complaint
- GP Meetings & Events, Inc.'s D/B/A CMI Resources's (1) Reply in Support of Motion to Dismiss Gary Abeyta' Amended Compliant, (2) Joinder in PB. Co. Inc.'s Reply in Support of Its Motion to Dismiss, and (3) Objection to Cross Motion
- Plaintiff Gary Abeyta's Response to Defendant PB Co., Inc's Email Submission of Supplemental Authority

Docket Code 926                    Form V000A                          Page 1

CV 2016-015771                                    06/12/2017

- PB Co., Inc.'s Reply in Support of Its Submission

This court previously found that Paul Bruno was an indispensable party pursuant to Ariz. R. Civ. P. 19(a) and directed Plaintiff to file an Amended Complaint on or before March 17, 2017. Plaintiff was given sufficient time to file an Amended Complaint in recognition that it may take time for Plaintiff to file a motion for stay relief in the bankruptcy court.

An Amended Complaint was filed on February 13, 2017. On page 2 of the Amended Complaint, Plaintiff stated that Paul Bruno was being named as a party "although Plaintiff is not brining any claim against Mr. Bruno." The Amended Complaint goes on to state that the "joinder of Mr. Bruno as a party is required pursuant to the Court's Minute Entry issued on January 17, 2017 so that he may participate in this action if he believes he has an interest in the outcome of this action." *Amended Complaint p. 2.* Three days later, on February 20, 2017, Plaintiff filed a Notice of Voluntary Dismissal of Paul Bruno.

Defendants seek dismissal with prejudice as a result of Plaintiff's failure to abide by the court's order. Plaintiff denies violating the court's order and requests the court amend the minute entry that required Plaintiff to name Paul Bruno as a party.

The court has already decided and ruled that Paul Bruno was an indispensable party pursuant to Ariz. R. Civ. P. 19(a). The applicable law and reasoning for the court's decision were previously presented in the court's minute entry issued on January 17, 2017. The court declines to amend the minute entry that required Plaintiff to name Paul Bruno as a party. Plaintiff's actions since the filing of the court's directive have resulted in Plaintiff's failure to comply with the court's order to name Paul Bruno as a party.

Ariz. R. Civ. P. 16(i) specifies what may happen in the event a party fails to obey a court order:

> Except on a showing of good cause, the court – on motion or on its own – must enter such orders as are just, including, among others, any of the orders in Rule 37 (b)(2)(A)(ii) through (vii), if a party or attorney:
> (a) fails to obey a scheduling or pretrial order or fails to meet the deadlines set in the order;

Ariz. R. Civ. P. 37(b)(2)(A) allows the court to enter an order "dismissing the action or proceeding in whole or part; . . . ,or treating as contempt of court the failure to obey any order . . . ." Ariz. R. Civ. P. 37(b)(2)(A)(v),(vii).

"Unless the court finds the conduct substantially justified or that other circumstances make an award of expenses unjust, the court – in addition to or in place of any other sanction – require the

Docket Code 926                    Form V000A                         Page 2

CV 2016-015771                                          06/12/2017

party, the attorney representing the party, or both, to pay: (A) another party's reasonable expenses, including attorney's fees, incurred as a result of the conduct...." Ariz. R. Civ. P. 16(i)(2).

At the very least, Plaintiff circumvented the court's Order and failed to follow this court's directive. The court declines to take the extreme position of dismissal with prejudice but the court already gave Plaintiff an opportunity to amend the Complaint and then Plaintiff evaded the court's order; therefore, dismissal of the entire Amended Complaint is appropriate. Plaintiff's conduct in avoiding the court's order was not substantially justified and an award of attorney fees for the filing of the second round of Motions to Dismiss is appropriate.

**IT IS ORDERED** granting PB Co., Inc.'s Motion to Dismiss the Amended Complaint and dismissing the Amended Complaint against PB Co., Inc. without prejudice.

**IT IS FURTHER ORDERED** granting GP Meetings & Events, Inc.'s D/B/A CMI Resources's Motion to Dismiss Mr. Gary Abeyta' Amended Complaint and dismissing the Amended Complaint against GP Meetings & Events, Inc. without prejudice.

**IT IS FURTHER ORDERED** dismissing the entire Amended Complaint without prejudice.

**IT IS FURTHER ORDERED** denying Cross-Motion for Court to Amend January 17, 2017 Minute Entry.

**IT IS FURTHER ORDERED** lifting the stay on the Temporary Restraining Order and denying the Temporary Restraining Order without prejudice.

**IT IS FURTHER ORDERED** granting PB Co., Inc. and GP Meetings & Events, Inc.'s requests for attorney fees.

**IT IS FURTHER ORDERED** denying the request for *double damages* pursuant to A.R.S. §§ 12-341 and 12-349.

**IT IS FURTHER ORDERED** directing PB Co., Inc. and GP Meetings & Events, Inc. to file their Application for Attorney Fees and Costs that were incurred as a result of the filing of their Second Motions to Dismiss on or before June 30, 2017.

# EXHIBIT D

1  SHERMAN & HOWARD L.L.C.
   David A. Weatherwax (No. 006996)
2  Craig A. Morgan (No. 023373)
   201 East Washington Street, Suite 800
3  Phoenix, Arizona 85004-2327
   Telephone: (602) 240-3009
4  Fax: (602) 240-6600
   E-mail: dweatherwax@shermanhoward.com
5          cmorgan@shermanhoward.com
   *Attorneys for Sherman & Howard L.L.C.*

6

MAY **3 0** 2018   FILED 10:12 Am

CHRIS DEROSE, Clerk
By  a. aycock
A. Aycock, Deputy

7                **SUPERIOR COURT OF ARIZONA**

8                     **MARICOPA COUNTY**

9  GARY ABEYTA, an individual,       Case No. CV2016-015771

10           Plaintiff,              **ORDER GRANTING SHERMAN &**
                                     **HOWARD'S: (1) MOTION TO SET ASIDE**
11         v.                        **AND/OR STRIKE THE SATISFACTIONS**
                                     **OF JUDGMENT IMPROPERLY FILED ON**
12 GP MEETING & EVENTS, INC.,        **FEBRUARY 12, 2018; (2) MOTION TO**
   d/b/a CMI RESOURCES, an Arizona   **DECLARE THAT THE SATISFACTIONS**
13 corporation; PB Co., Inc., an Arizona **OF JUDGMENT IMPROPERLY**
   corporation, *et al.,*            **RECORDED ON FEBRUARY 12, 2018 ARE**
14                                   **VOID; AND (3) REQUEST FOR**
           Defendants.              **ATTORNEYS' FEES AND COSTS**
15
                                     (Before the Honorable Lindsay Abramson)
16

17     The Court has considered, among other thigs:

18     (i) "Sherman & Howard's (1) Motion To Set Aside And/Or Strike The

19 Satisfactions Of Judgment Improperly Filed On February 12, 2018; (2) Motion To

20 Declare That The Satisfactions Of Judgment Improperly Recorded on February 12, 2018

21 Are Void; And (3) Request For Attorneys' Fees and Costs" filed on March 2, 2018 (the

22 "Motion"), together with "Sherman & Howard L.L.C.'s Motion To Intervene ..." and

23 related filings in this action concerning Sherman & Howard's L.L.C.'s claim of an

24 attorney charging lien with regard to the $80,974.52 Judgment entered by the Court in

25 favor of defendant PB Co., Inc. and against plaintiff Gary Abeyta;

26     (ii) "Gary Abeyta's Response To Sherman & Howard's (1) Motion To Set Aside

27 And/Or Strike The Satisfactions Of Judgment Improperly Filed On February 12, 2018;

28 (2) Motion To Declare That The Satisfactions Of Judgment Improperly Recorded on

February 12, 2018 Are Void; And (3) Request For Attorneys' Fees and Costs" filed on April 20, 2018 (the "Response"), in which Mr. Abeyta advised the Court that "Mr. Abeyta did not make any payment toward the judgment related to the Motion", and "Mr. Abeyta did not authorize or otherwise participate in preparing, filing, or recording the satisfactions of judgment related to the Motion";

(iii) Mr. Bruno's "Motion Seeking Clarification And Motion To Continue April 30, 2018 Hearing To Accommodate Insurance Company" filed on April 20, 2018 ("Mr. Bruno's Motion"); and

(iv) the Court's April 30, 2018 Minute Entry that was entered on May 1, 2018, wherein the Court, among other things (a) vacated the April 30, 2018 hearing, and (b) "ordered that Mr. Bruno file [a] written response [to the Motion] by **May 16, 2018**."

Mr. Bruno did not file a written response to the Motion.

Based on this review, the applicable law, Mr. Bruno's failure to file a response, and good cause appearing for the relief requested in the Motion, the Court finds that: (1) Sherman & Howard L.L.C. ("S&H") has an attorney charging lien (the "Charging Lien") on the full amount of the $80,974.52 Judgment (the "Judgment") entered by the Court in favor of defendant PB Co., Inc. ("PB Co.") and against plaintiff Gary Abeyta ("Abeyta"); (2) S&H has not been paid anything in satisfaction of its Charging Lien; (3) Mr. Abeyta did not make any payment toward the Judgment (nor has anyone on his behalf), and Mr. Abeyta did not authorize or otherwise participate in preparing, filing, or recording any of the documents titled "Satisfaction of Judgment and Release of Lien A.R.S. §§ 33-964, 967" relating to the Motion (the "Satisfaction of Judgment/Lien Release Documents"); (4) there was no basis to file or record any of the Satisfaction of Judgment/Lien Release Documents; and (5) the Satisfaction of Judgment/Lien Release Documents (i) are baseless, groundless, and frivolous, (ii) were filed and recorded improperly and without substantial justification, and (iii) were filed and recorded for the purpose of unreasonably expanding or delaying this proceeding. Accordingly,

IT IS HEREBY ORDERED that:

1    1. The Motion is granted.

2    2. The three Satisfaction of Judgment/Lien Release Documents filed on February 12,
3    2018 are set aside and shall be stricken from the record in this case.

4    3. The two Satisfaction of Judgment/Lien Release Documents recorded on February
5    12, 2018 are void.

6    4. The Judgment remains in full force and effect, outstanding, and due and owing in
7    full.

8    5. S&H is awarded its attorneys' fees and costs incurred in connection with this
9    Motion and related proceedings against Paul Bruno, PB Co., Inc., and GP Meeting &
10   Events, Inc. dba CMI Resources, jointly and severally, pursuant to A.R.S. §§ 12-341, 12-
11   341.01(A), and 12-349. S&H shall file an Application for its attorneys' fees and costs
12   within 60 days after this Order is filed with the Clerk of Court.

13   6. S&H may immediately record this Order with the Maricopa County Recorder's
14   office, which shall serve as notice that (i) the Judgment and S&H's Charging Lien remain
15   in full force and effect as of the date the Judgment and S&H's Charging Lien were first
16   recorded with the Maricopa County Recorder's office, and (ii) the two Satisfaction of
17   Judgment/Lien Release Documents recorded on February 12, 2018 are void.

18   Dated: May ___ 2018

19
20                                          The Honorable Lindsay Abramson
                                            Commissioner, Superior Court of
21                                          Arizona, Maricopa County
22
23
24
25
26
27
28

| | |
|---|---|
| 1 | **ORIGINAL** e-filed on May 29, 2018, with copies transmitted electronically |
| 2 | via the Clerk's office to the e Honorable Lindsay Abramson. |
| 3 | **COPIES** mailed on May 29, 2018 to: |
| 4 | Justin V. Niedzialek |
| | Niedzialek Law Office, PLLC |
| 5 | 2303 North 44th Street, Suite 14-1455 |
| | Phoenix, AZ 85008-2442 |
| 6 | Attorneys for Plaintiff |
| 7 | PB Co., Inc. |
| | c/o Paul Bruno, Statutory Agent |
| 8 | 3104 E. Camelback #539 |
| | Phoenix, Arizona 85016 |
| 9 | |
| | GP Meeting & Events, Inc. d/b/a CMI Resources |
| 10 | c/o Paul Bruno |
| | 5935 N. Echo Canyon Lane |
| 11 | Phoenix, Arizona 85018 |
| | and |
| 12 | 5835 N. Echo Canyon Circle |
| | Phoenix, Arizona 85018 |
| 13 | |
| | Paul Bruno |
| 14 | 5835 N. Echo Canyon Circle |
| | Phoenix, Arizona 85018 |
| 15 | |
| | Paul Bruno |
| 16 | 3104 E. Camelback #539 |
| | Phoenix, Arizona 85016 |
| 17 | |
| | */s/ Kathryn Hardy* |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |