Justin V. Niedzialek (025654)
DUNN DESANTIS WALT & KENDRICK, LLP
4742 N. 24th Street, Suite 300
Phoenix, Arizona 85016
Telephone: (602) 842-2566
Facsimile: (619) 255-4868
Email: jniedzialek@ddwklaw.com
Attorneys for Gary Abeyta

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 7 |
| PAUL LEONARD BRUNO, | Case No. 2:18-bk-07428-PS |
| Debtor. | Adversary No. 2:19-ap-00323-PS |
| GARY ABEYTA, an individual, | **GARY ABEYTA'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNTS TWO AND THREE OF PAUL BRUNO'S COUNTERCLAIM, WITH PREJUDICE** |
| Plaintiff/Counterdefendant, | |
| v. | Hearing Date: July 22, 2020 |
| PAUL BRUNO, an individual, | Hearing Time: 1:30 p.m. |
| Defendant/Counterclaimant. | Hearing Location: 230 N. First Ave. Phoenix, AZ Courtroom 601 |

Plaintiff/Counterdefendant Gary Abeyta ("Mr. Abeyta"), by and through undersigned counsel, hereby submits his Reply in Support of Motion to Dismiss Counts Two and Three of Paul Bruno's Counterclaim, with Prejudice (the "Motion"), filed in this matter at Docket Entry ("DE") 44. The response to Mr. Abeyta's Motion filed by Defendant/Counterclaimant Paul Bruno ("Mr. Bruno") fails to set forth any viable grounds to deny the relief requested in the Motion. Ultimately, the dispositive issue that this Court must consider is whether Counts Two and Three constitute prepetition claims that are property of the bankruptcy estate. For the reasons discussed in the Motion and herein, they are and, as a result, this Court must dismiss Counts Two and Three of the Counterclaim.

This Reply is supported by the attached Memorandum of Points and Authorities, together with the Court's file in this matter, all of which are incorporated herein by reference.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION.

Counts Two and Three of Mr. Bruno's Counterclaim (collectively referred to as the "Alleged Stay Violation Claims") arise out of allegations that Mr. Abeyta and The Cavanagh Law Firm, PA ("Cavanagh") (1) purportedly withheld the deed to the real property identified as 5935 N. Echo Canyon Lane, Phoenix, AZ 85018 ("Echo Canyon") starting in August 2016; and (2) pursued Maricopa County Superior Court Case No. CV2016-015771 (the "State Court Action") until its dismissal in June 2017.[1] *See* Counterclaim ¶¶ 108-161.

On June 1, 2020, Mr. Abeyta filed the Motion seeking dismissal, with prejudice, of the Alleged Stay Violation Claims. As discussed in the Motion, the purported conduct underlying the Alleged Stay Violation Claims arose in the context of Mr. Bruno's prior bankruptcy, Case No. 2:16-bk-11826-PS (the "Prior Bankruptcy"). As a result, the Alleged Stay Violation Claims constitute prepetition claims (*i.e.*, claims that arose before Mr. Bruno filed the current bankruptcy case) and, therefore, are property of the bankruptcy estate which only Chapter 7 Trustee Maureen Gaughan (the "Trustee") has standing to pursue.

On June 17, 2020, Mr. Bruno filed, at DE 50, *Defendant's (1) Response Opposing Gary Abeyta's Motion to Dismiss Counts Two and Three of Defendant's Counterclaims; (2) Request to Set Evidentiary Hearing on Stay Violations; and (3) Alternatively, Request for Leave to Amend Counterclaims* (the "Response"). The Response relies primarily upon the following theories: (1) *res judicata* does not apply with respect to the Alleged Stay Violation Claims; (2) the purported conduct underlying the Alleged Stay Violation Claims continued after the dismissal of the Prior Bankruptcy and into the pending bankruptcy; (3) the Alleged Stay Violation Claims are "crucial" to Mr. Bruno's defenses; and (4) the Trustee lacks standing with respect to the Alleged Stay Violation Claims. Ultimately, the

---

[1] The State Court Action was removed to this Court in Adversary Proceeding No. 2:18-ap-00272-PS.

Response does nothing more than solidify the reasons supporting dismissal of the Alleged Stay Violation Claims.

## II. THE ALLEGED STAY VIOLATION CLAIMS ARE PREPETITION CLAIMS AND PROPERTY OF THE BANKRUPTCY ESTATE.

### A. The Legal Principle of *Res Judicata* Is Irrelevant to the Motion.

Mr. Bruno initially argues that the Court's decision in Case No. 2:18-ap-00535-PS ("AP 535") "has no *res judicata* effect on this adversary proceeding." Response, p. 3, ls. 10-11. Mr. Bruno's argument is misplaced because the Motion does not argue that *res judiciata* applies, but instead argues that the legal principle addressed by the Court in AP 535 (*i.e.,* that Mr. Bruno lacks standing to pursue prepetition claims for alleged violations of the automatic stay) applies to the facts in this instant proceeding.

The Motion does not assert that the parties or facts of AP 535 share identity with the parties and facts in the instant matter. Instead, the Motion references AP 535 simply because the Court already considered and applied legal principles in that case that, for the reasons discussed in the Motion, apply in this case. Specifically, in AP 535, the Court concluded that Mr. Bruno does not have standing to raise prepetition claims asserting alleged violations of the automatic stay. While Mr. Bruno alleges different violations of the automatic stay in this case, the Alleged Stay Violation Claims are still prepetition claims that Mr. Bruno, nonetheless, lacks standing to pursue – just as he lacked standing in AP 535. Put simply, the legal principles addressed in AP 535 apply equally in this case.

Indeed, the Motion addresses how, independent of AP 535, the legal principles expounded in that case apply to the facts of this case. As discussed in the Motion, Mr. Bruno filing the pending bankruptcy case created a bankruptcy estate which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." *See* 11 U.S.C. §§ 301, 541(a). Further, the bankruptcy trustee is the party with the ***exclusive right*** to pursue claims on behalf of the bankruptcy estate. *Estate of Spirtos v. One San Bernardino Cty. Superior Court Case Numbered SPR 02211*, 443 F.3d 1172, 1176 (9th Cir. 2006); *see also In re Cunningham*, 658 F. App'x 343, 344 (9th Cir. 2016) ("The bankruptcy court properly dismissed [the debtor's] adversary proceeding because

[the debtor] lacks standing to pursue claims that are property of the bankruptcy estate"); *Skelton v. Clements*, 408 F.2d 353, 354 (9th Cir. 1969) (the trustee is vested with a debtor's causes of action existing at the time of filing the bankruptcy). Based on the foregoing, any purported claims of Mr. Bruno that accrued prior to the date he filed the pending bankruptcy case – June 1, 2018 – constitutes property of the bankruptcy estate which can *only* be pursued by the Trustee. The Motion continues by explaining the grounds establishing why the Alleged Stay Violation claims accrued prepetition and, therefore, constitute claims that only the Trustee has standing to pursue. *See* Motion, § III.B.

*Res judicata* does not have any bearing on the Motion. Instead, relevant to the Motion are (1) the legal principle that the Trustee is the sole party with standing to assert prepetition claims for alleged stay violations; and (2) the fact that the Alleged Stay Violation Claims are prepetition claims.

### B. The Alleged Stay Violation Claims Are Prepetition Claims that Are Property of the Bankruptcy Estate.

In light of the foregoing, the dispositive inquiry related to the Motion is whether the Alleged Stay Violation Claims are prepetition claims. If they are, then they are property of the bankruptcy estate and the Trustee has sole standing to assert them. As discussed below, the allegations of the Counterclaim and the arguments raised in the Response unequivocally establish that the Alleged Stay Violation Claims are prepetition claims.

A claim constitutes a prepetition claim and, therefore, property of the bankruptcy estate when "the events giving rise to a claim occur before the debtor files for bankruptcy…" *In re Harper*, 557 B.R. 171, 174 (Bankr. D. Ariz. 2016); *see also In re Swift*, 198 B.R. 927, 938 (Bankr. W.D. Tex. 1996) (if a debtor could have brought a cause of action on a claim as of the commencement of a bankruptcy case, it constitutes property of the estate). A simple review of the purported facts asserted in the Alleged Stay Violation Claims clearly establish that the claims are prepetition claims and property of the estate. For instance, with respect to Count Two, Mr. Bruno alleges:

- "When Defendant filed his Chapter 13 Petition on August 19, 2016, Defendant served notice of the bankruptcy filing to Plaintiff, who appeared immediately in the case through Cavanagh Law Firm." Counterclaim ¶ 111.

- "Between August 19, 2016, and for several months after, Defendant made multiple email demands to Plaintiff and Cavanagh Law Firm to turn over the deed to Echo Canyon in order for Defendant to either (a.) refinance the property using a pre-approved line of credit from Western Bank or (b.) to consummate a $1,350,000 offer to purchase made by real estate broker Augusto Meoli of Sotheby's." Counterclaim ¶ 113.
- "…Plaintiff through Cavanagh refused to turn over the deed in violation of 11 U.S.C. § 362(a)." Counterclaim ¶ 114.
- "In fact, Plaintiff and Cavanagh sent an email demand to Plaintiff in August 2016 demanding Plaintiff pay Cavanagh Law Firm $200,000 in *pendente lite* attorney fees in order to secure release of the deed." Counterclaim ¶ 115.
- "When Plaintiff did not have $200,000 to meet the extortion demands of Cavanagh and Plaintiff, they withheld the Echo Canyon deed as promised causing Echo Canyon to go into default." Counterclaim ¶ 116.
- "When Plaintiff and Cavanagh withheld the Echo Canyon deed, they violated the bankruptcy automatic stay, and damaged Defendant, creditors and the bankruptcy estate." Counterclaim ¶ 119.

With respect to Count Three, the Counterclaim alleges that "Plaintiff and Cavanagh refused to seek stay relief and proceeded with litigation in CV2016-015771 in violation of the automatic stay *until June 12, 2017*." Counterclaim ¶ 152 (emphasis added). The Alleged Stay Violation Claims are entirely devoid of any reference whatsoever to alleged stay violations in Mr. Bruno's current bankruptcy.

The foregoing, standing alone, provides sufficient grounds for this Court to determine that the Alleged Stay Violation Claims are prepetition claims that are property of the bankruptcy estate. In addition to the allegations in the Counterclaim, however, in the Response, Defendant *admits on multiple occasions* that the Alleged Stay Violation Claims arose prepetition. For instance, Defendant alleges:

- "these automatic stay violations have been accruing damages since August 2016 and October 2016 respectively." Response, p. 10, ls. 14-15.
- "Plaintiff, himself, has been in contempt of court for three years (going on four) on automatic stay violations…" Response, pp. 10-11, ls. 28-2.
- "the Counterclaims surround automatic stay violations that commenced during the [Prior Bankruptcy] that were left unremediated." Response, p. 11, ls. 19-20.
- "Before moving forward towards the determination of standing requires the Court to make dispositive rulings and put an end to these three (going on four) year continuous automatic stay violations." Response, p. 14, ls. 17-19.

The allegations in the Counterclaim and the foregoing statements from the Response confirm that the "events giving rise" to the Alleged Stay Violation Claims accrued within

the context of the Prior Bankruptcy, which necessarily makes them prepetition claims and property of his current bankruptcy estate. *In re Harper*, *supra*. Mr. Bruno, accordingly, lacks standing to assert the claims and dismissal is necessary. *Estate of Spirtos*, *supra*.

### 1. Defendant's Attempts to Implicate the Current Bankruptcy in the Alleged Stay Violation Claims Do Not Change Their Character as Prepetition.

In an obvious effort to avoid the prepetition character of the Alleged Stay Violation Claims, the Response attempts to tie those claims into Mr. Bruno's pending bankruptcy. Even ignoring the fact that the alleged circumstances are nowhere to be found in his Counterclaim, these attempts to avoid the prepetition nature of the Alleged Stay Violation Claims are nonetheless unavailing.

First, in regard to Count Two, Mr. Bruno references the May 16, 2019 hearing wherein this Court granted the Trustee's motion seeking approval to sell Echo Canyon. *See* Response, p. 6, ls. 6-21. As the Court's record reflects, during that hearing, Mr. Abeyta asserted his rights as a co-owner of Echo Canyon pursuant to 11 U.S.C. § 363(j). *See* Administrative Case DE 625, 638. Mr. Bruno evidently believes that by asserting rights afforded to him under the Bankruptcy Code, Mr. Abeyta was "threatening to withhold the deed" and that such threats were made "in open court, while standing at the podium making false statements to Judge Sala about the Echo Canyon stay violation." Response, p. 6, ls. 11-14. Notwithstanding the nonsensical nature of and lack of specifics in this position, in making this argument, Mr. Bruno nonetheless alleges that the foregoing "is the identical conduct that Plaintiff engaged in *since August 2016*…" Response, p. 6, l. 15 (emphasis added). So, even when trying to tie Count Two into the current bankruptcy, Mr. Bruno nonetheless confirms that the claim arises out of conduct that allegedly occurred – and any purported claim therefore accrued – in the context of the Prior Bankruptcy.

With respect to Count Three, Defendant alleges that the alleged stay violation related thereto extended beyond dismissal of the State Court Action because "on May 30, 2018 (the day before the petition date) the Arizona Superior Court issued a default judgement against the Defendant." Response, p. 8, ls. 8-10. First, Defendant, again,

admits that the foregoing event occurred prepetition. Second, the "default judgment" referenced by Defendant is not a judgment, but rather is actually an order granting Sherman & Howard's request that the court set aside a satisfaction of judgment filed by Mr. Bruno – it does not relate in any way to any conduct of Mr. Abeyta. Obviously, a ***prepetition*** order entered at ***the request of Sherman & Howard*** cannot possibly alter the characterization of Count Three of the Counterclaim as a prepetition claim.

In further effort to avoid the prepetition nature of the Alleged Stay Violation Claims, Mr. Bruno also argues that the "Expert Report of Susan M. Freeman… details the Plaintiff's Second Bankruptcy post-petition automatic stay violations (See Answer Ex.A). These allegations are plead into the Counterclaim on p. 12 ¶¶ 92-94." Response, p. 9, ls. 5-6. The foregoing portions of the Counterclaim state:

- "Ms. Freeman's expert report concludes Defendant is a victim of (i.) bankruptcy fraud; (ii.) conspiracy to commit fraud; (iii.) violations of the RICO Act in connection with bankruptcy case no. 2:16-bk-11826-PS and 2:18-bk-07428-PS." Counterclaim ¶ 92.
- "Pages 25 and 62 of the Freeman Report mention the unlawful acts committed against Defendant by Plaintiff, his current counsel and Cavanagh Law Firm." Counterclaim ¶ 93.
- "In January 2020, the Chapter 7 Trustee settled the removed action 2:18-ap-00271." Counterclaim ¶ 94.

A review of pages cited by Defendant (pages 25 and 62 of Exhibit A to the Counterclaim) reveal zero allegations pertaining to the Alleged Stay Violation Claims. In fact, the only assertion related to Mr. Abeyta in the foregoing pages is on page 25 (page 62 is entirely devoid of any reference to Mr. Abeyta), which states, "Bruno's filings in the current bankruptcy case also include an affidavit from a non-party, Randy Feldman of Sanctuary Bail Bonds, attesting under oath to S&H's threatening telephone calls, sometimes at night, in what Feldman perceived to be a strategic coordinated effort with Abeyta's counsel to keep Bruno in jail and make it financially impossible to secure a release bond." Mr. Bruno, therefore, is making an intentionally misleading statement to the Court in an effort to avoid obvious grounds for dismissal of the Alleged Stay Violation Claims.

### C. Defendant Fails to Set Forth Any Grounds Giving Him Standing to Assert Prepetition Claims.

As referenced above, the issue before the Court is whether Mr. Bruno has standing to assert claims arising out of alleged stay violations that occurred ***prepetition***. While Defendant relies upon a number of cases in the Response, none of those cases address a chapter 7 debtor's standing to pursue prepetition claims, let alone grant Mr. Bruno standing to assert prepetition claims, such as the Alleged Stay Violation Claims.

For instance, Defendant relies upon *In re Pace*, 67 F.3d 187 (9th Cir. 1995), to contend that the Trustee is not an "individual" within the scope of 11 U.S.C. § 362. While the court in that case found that a chapter 7 trustee is not an individual "entitled to recover attorney's fees as damages," it does not address a prepetition stay violation claim, but instead addresses an alleged stay violation that occurred in the context of the bankruptcy case under which the claim was asserted. In addition, Defendant references *In re Dawson*, 390 F.3d 1139 (9th Cir. 2004), for the proposition that stay violation claims are "unique to human beings" but, again, that case does not address standing to bring prepetition stay violation claims that constitute property of the chapter 7 bankruptcy estate.

Defendant also relies heavily upon *In re Snowden*, 769 F.3d 651 (9th Cir. 2014) for two legal propositions: (1) "that an automatic stay violation does not end until the bankruptcy court rules on the violation"; and (2) that "Ninth Circuit law forecloses the proposition that that [sic] automatic stay violations are negotiable." First, it appears that Defendant relies upon this case to argue that the Alleged Stay Violation Claim related to Echo Canyon did not end when the Prior Bankruptcy was dismissed, but instead continued even after the automatic stay created by the Prior Bankruptcy terminated. Even ignoring that it defies logic for a stay violation to occur after the stay is terminated, as discussed above, based on the allegations in the Counterclaim and the statements in the Response, the foregoing claim accrued prepetition and, therefore, constitutes a prepetition claim that is property of Mr. Bruno's bankruptcy estate. Second, the idea that *In re Snowden* stands for the proposition that stay violation claims cannot be settled, as Defendant argues, is patently

false and not found anywhere within that opinion. Indeed, reading *In re Snowden* in such a manner would entirely contradict the Bankruptcy Code and existing legal precedent. *See, e.g.*, 11 U.S.C. § 323(a) ("The trustee in a case under this title is the representative of the estate").

Put simply, none of the cases cited by Defendant grant a debtor standing to pursue a prepetition stay violation claim that is property of a chapter 7 bankruptcy estate, nor does Defendant cite any legal precedent that excludes prepetition stay violation claims from property of the estate.[2]  For the reasons discussed above, the Alleged Stay Violation Claims are prepetition claims and, therefore, Defendant lacks standing to assert said claims.

**D. Whether the Alleged Stay Violation Claims Bear Upon Defendant's Defenses to the Complaint Objecting to His Discharge Is Irrelevant to His Standing to Pursue Counterclaims.**

Defendant argues that dismissal of the Alleged Stay Violation Claims is unwarranted because the alleged stay violations "are crucial to Defendant's defense" to Mr. Abeyta's Complaint objecting to Defendant's discharge under 11 U.S.C. § 727. Response, p. 10, ls. 13-15. A counterclaim seeks affirmative relief while a defense merely precludes or diminishes the recovery sought by the plaintiff. *Riverside Mem'l Mausoleum, Inc. v. UMET Tr.*, 581 F.2d 62, 68 (3d Cir. 1978). The issue before this Court is whether Mr. Bruno can assert the Alleged Stay Violation Claims as a counterclaim to obtain affirmative relief from Mr. Abeyta. For the reasons discussed herein, such claims are prepetition claims that vest standing in the Trustee. Whether such claims can be used in defense of Mr. Abeyta's objection to his discharge, however, is a completely separate issue not before the Court and not pertinent to Mr. Abeyta's Motion to Dismiss.

**III. DEFENDANT'S REQUEST TO SET AN EVIDENTIARY HEARING ON THE ALLEGED STAY VIOLATIONS IS UNWARRANTED.**

Defendant requests that this Court set the Alleged Stay Violation Claims for evidentiary hearing because "[b]efore moving forward towards the determination of

---

[2] Notably, these circumstances were addressed by the Court in AP 535, so it is clear that Defendant is knowingly ignoring these circumstances.

standing requires the Court to make dispositive rulings and put an end to these three (going on four) year continuous automatic stay violations." Response, p. 14, ls. 17-19. Initially, the Court already set a scheduling order with respect to this matter and, therefore, to the extent that Defendant can pursue the Alleged Stay Violation Claims, he will have his opportunity to do so in due course pursuant to said order. Beyond that, the idea of scheduling an evidentiary hearing on a claim *before* determining whether Defendant can even pursue that claim makes zero procedural sense. Standing must be determined before a decision on the merits is warranted. Nonetheless, for the reasons discussed herein, Defendant *does not* have standing to pursue the Alleged Stay Violation Claims and, therefore, Defendant's request for an evidentiary hearing must be denied.

## IV. AMENDMENT OF THE COUNTERCLAIMS IS UNWARRANTED.

The Court should also deny Defendant's request to amend the Counterclaims. As discussed in the Motion and herein, it is undeniable that the Alleged Stay Violation Claims accrued before Mr. Bruno filed his pending bankruptcy. Those claims, to the extent they exist, are therefore prepetition claims that are property of the bankruptcy estate. Amending the Counterclaims will be futile because no amendment can give Defendant standing to assert claims that are property of the bankruptcy estate. Indeed, this fact is confirmed by Mr. Bruno in his request to amend, wherein he says that he will "tighten up the facts surrounding the stay violations *that moved into the Second Bankruptcy*…" Response, p. 14, ls. 26-27. Even assuming, *arguendo*, that the purported stay violations "moved into the Second Bankruptcy," that necessarily means that they accrued in the context of the Prior Bankruptcy and, therefore, are prepetition claims that are property of the bankruptcy estate.

## V. CONCLUSION.

Based on the foregoing, Mr. Abeyta respectfully requests that the Court grant the Motion and dismiss the Alleged Stay Violation Claims, with prejudice.

///

///

///

| | |
|---|---|
| 1 | RESPECTFULLY SUBMITTED this 6th day of July, 2020. |
| 2 | DUNN DESANTIS WALT & KENDRICK, LLP |
| 4 | By: /s/ Justin V. Niedzialek |
| | Justin V. Niedzialek |
| 5 | 4742 N. 24th Street, Suite 300 |
| | Phoenix, Arizona 85016 |
| | Attorneys for Gary Abeyta |

Copy of the foregoing emailed this 6th day of July, 2020, to:

Paul Bruno
23 Railroad Ave., # 24
Danville, CA 94526
Paulbruno1975@yahoo.com

/s/ Justin V. Niedzialek